UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THE OHIO SECURITY INSURANCE
COMPANY,

        Plaintiff,        24-cv-149 (PKC)

    -against-        OPINION AND ORDER

KINSALE INSURANCE COMPANY AND
BLACK BULL BUILDERS LLC,

        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.,

    Plaintiff The Ohio Security Insurance Company ("Ohio Security") seeks a declaration that Defendant Kinsale Insurance Company ("Kinsale") is obligated to defend Ohio Security's insureds, Equinox Hudson Yards, Inc., Equinox Holdings Inc., Ery Tenant LLC c/o The Related, Ery North Tower RHC Tenant LLC, Eclipse Development Inc., and The Related Companies, L.P. (collectively the "Equinox Entities"), in connection with a personal injury lawsuit brought against the Equinox Entities and Defendant Black Bull Builders LLC ("Black Bull"). Ohio Security asserts that the Equinox Entities are "additional insureds" under a commercial general liability insurance policy that Kinsale issued to Black Bull (the "Kinsale Policy") and are therefore entitled to coverage by Kinsale on a primary, non-contributory basis. Kinsale has denied any obligation to defend or indemnify either Black Bull or the Equinox Entities under the Kinsale Policy. Pursuant to the Federal Arbitration Act (the "FAA"), Kinsale now moves to compel arbitration of Ohio Security's claims and Black Bull's crossclaims based on an arbitration provision in the Kinsale Policy and to stay or dismiss this action. Ohio Security argues that it is not bound to the terms of the arbitration provision because it is not a signatory to

the Kinsale Policy and also that its claims are not within the scope of the provision.  Black Bull has not opposed Kinsale's motion.

For reasons that will be explained, the Court will grant Kinsale's motion to compel arbitration of Ohio Security's claims and Black Bull's crossclaims.

BACKGROUND

Ohio Security issued a commercial general liability insurance policy to Atlantic Exterior Wall Systems LLC ("Atlantic Exterior") in connection with Atlantic Exterior's construction work at 35 Hudson Yards in Manhattan, New York (the "Ohio Security Policy"). (Am. Compl., ECF 6 ¶¶ 16-17.)  Kinsale issued the Kinsale Policy, also a commercial general liability policy, to Black Bull in connection with Black Bull's construction work at that same site.  (Id. ¶¶ 18-19.)  Ohio Security alleges that under the agreement entered into by Black Bull to perform services at 35 Hudson Yards, Black Bull was required to name the Equinox Entities as "additional insureds" on the Kinsale Policy on a "primary and noncontributory basis." (Id. ¶¶ 20-27.)

Following an alleged trip and fall accident while walking on temporary flooring installed by Black Bull, an employee of Atlantic Exterior brought a personal injury action in New York state court naming Black Bull and the Equinox Entities as defendants.  (Id. ¶¶ 2-3, 28.)  Kinsale denied coverage to Black Bull for the lawsuit under the Kinsale Policy.  (Decl. of Matthew Ferlazzo in Support of Def.'s Mot. ("Ferlazzo Decl.") Ex. 2, ECF 28-2.)  Kinsale also denied any obligation to defend and indemnify the Equinox Entities as "additional insureds" under the Kinsale Policy. (Ferlazzo Decl. Ex. 3, ECF 28-3.)  Ohio Security alleges that, as a result, it has been forced to defend the Equinox Entities pursuant to the Ohio Security Policy it issued to Atlantic Exterior.  (See Am. Compl. ¶¶ 16, 51.)

In this action, Ohio Security asserts that the Equinox Entities "qualify as additional insureds under the Kinsale Policy issued to Black Bull." (Id. ¶ 41.) In turn, Ohio Security seeks a declaration that the Kinsale Policy "affords primary coverage" to the Equinox Entities for the personal injury action and that Kinsale is "obligated to insure, defend and indemni[fy]" the Equinox Entities "without any contribution" by them or Ohio Security. (Id. at 10.) To go along with this, Ohio Security brings a claim for equitable subrogation against Kinsale, alleging that "[b]ecause of Kinsale's breach" that resulted in Ohio Security's defense of the Equinox Entities, Ohio Security is "subrogated to the rights of the [Equinox Entities]" and is "entitled to reimbursement of all defense fees." (Id. ¶¶ 61-62.) Ohio Security also brings claims for quantum meruit/unjust enrichment, declaratory judgment for breach of insurance, and statutory interest. (Id. ¶¶ 49-58, 64-66.) At the same time, Black Bull brings a crossclaim against Kinsale seeking a declaration that Kinsale is obligated to provide it with coverage under the Kinsale Policy and another crossclaim for breach of contract. (Black Bull Answer, ECF 23 ¶¶ 67-80.)

Kinsale now moves to compel arbitration of Ohio Security's claims and Black Bull's crossclaims and to stay or dismiss this action. Kinsale contends that Ohio Security and Black Bull are bound by an arbitration provision in the Kinsale Policy, which states in relevant part:

> All disputes under this policy shall be subject to binding arbitration as follows:
>
> a. All disputes over coverage or any rights afforded under this policy, including whether an entity or person is a named insured, an insured, an additional insured, or entitled to coverage under the Supplementary Payments provisions of this policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute.

(Ferlazzo Decl. Ex. 1, ECF 28-1 at 25.)  Black Bull has not opposed Kinsale's motion.  On the other hand, Ohio Security argues that as a nonsignatory to the Kinsale Policy it cannot be compelled to arbitrate and that, in any event, its claims do not fall within the scope of the arbitration provision.

DISCUSSION

Legal Standard on a Motion to Compel Arbitration

The FAA "embodies a national policy favoring arbitration." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 228-29 (2d Cir. 2016) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)) (alterations omitted).  Under Section 2 of the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  Id. § 4.

A court considering a motion to compel arbitration must resolve two questions: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 394 (2d Cir. 2015) (quoting Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005), abrogated on other grounds by Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287 (2010)).  In doing so, it applies a "standard similar to that applicable for a motion for summary judgment." Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  The summary judgment standard requires a court to

"consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted), and to "draw all reasonable inferences in favor of the non-moving party." Nicosia, 834 F.3d at 229. However, the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atlantic Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

Agreement to Arbitrate

For its part, Black Bull has not opposed Kinsale's motion, nor has it disputed that the Kinsale Policy contains a valid and enforceable arbitration provision. Ohio Security concedes the existence of a binding arbitration agreement between Kinsale and Black Bull. (Pl. Br., ECF 32 at 3.) It contends, however, that as a nonsignatory to the Kinsale Policy it is not bound by the terms of the arbitration provision contained therein.

"Arbitration is contractual by nature—a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)) (internal quotation marks omitted). Nonetheless, the Second Circuit has recognized five theories "aris[ing] out of common law principles of contract and agency law" under which a nonsignatory may be bound to an arbitration agreement: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. The only theory relevant here is estoppel. Kinsale argues that Ohio Security is estopped from avoiding the arbitration provision because it seeks to invoke and enforce the Kinsale Policy against Kinsale.

Under the theory of estoppel, a nonsignatory "knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001) (quoting Thomson-CSF, 64 F.3d at 778) (brackets omitted). But the benefits of exploiting that agreement "must be direct—which is to say, flowing directly from the agreement." Id. In other words, "[t]he nonsignatory beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit." Trina Solar US, Inc. v. Jasmin Solar Pty Ltd, 954 F.3d 567, 572 (2d Cir. 2020).

In Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1062-63 (2d Cir. 1993), for example, the arbitration provision at issue was found in an agreement regulating the use of the "Deloitte" trade name internationally. The Second Circuit concluded that "[a] nonsignatory who had received a copy of the agreement, raised no objections to it and made use of that trade name pursuant to the agreement was estopped from arguing it was not bound by the arbitration clause in the agreement." MAG Portfolio, 268 F.3d at 61 (citing Deloitte, 9 F.3d at 1064). Also, in American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 351 (2d Cir. 1999), a shipyard entered into an agreement containing an arbitration clause with a ship classification society to obtain a classification for a racing yacht. After the owners of the yacht received a classification certificate that incorporated by reference the arbitration clause, the yacht suffered damage, and the owners brought claims against the ship classification society. Id. The Second Circuit determined that the nonsignatory owners were required to arbitrate their claims because they received direct benefits from the classification certificate in the form of "(1) significantly lower insurance rates on the [yacht], and (2) the ability to sail under the French flag." Id. at 353.

In contrast, "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." MAG Portfolio, 268 F.3d at 61. Thomson-CSF helps to illustrate this distinction. There, two companies entered into an agreement containing an arbitration clause to trade flight simulator equipment exclusively with one another. Id. at 775. A third-party competitor later acquired one of the companies and integrated it into its own structure, while the unacquired company remained bound by the agreement. Id. at 775, 779. The third-party competitor stopped trading with the unacquired company under the agreement, leading the company to contend that the competitor had benefitted from the agreement by shutting it out of the market. Id. at 779. The Second Circuit found that "[w]hile the agreement was crucial to the benefit the third party gained by shutting its competitor out of the market, the agreement was not the direct source of the benefit." MAG Portfolio, 268 F.3d at 62 (citing Thomson-CSF, 64 F.3d at 778-79). "Rather, the benefit flowed from the nonsignatory's exploitation of the contractual relation created through the agreement by acquiring one of the signatories to the agreement." Id.

Because the benefits that Ohio Security seeks from the Kinsale Policy are more analogous to the direct benefits present in Deloitte and Tencara than to the indirect benefit found in Thomson-CSF, the Court concludes that Ohio Security is estopped from objecting to arbitration of its claims. Ohio Security requests a declaration from the Court that Kinsale is obligated to insure, defend, and indemnify the Equinox Entities on a primary and noncontributory basis. (Am. Compl. at 10.) In turn, Ohio Security asserts that it is entitled to reimbursement from Kinsale for the amount that it has incurred in defending the Equinox Entities. (Id. at 11.) In seeking this relief, Ohio Security necessarily invokes the Kinsale Policy.

Its entitlement to declaratory judgment depends entirely on the scope of the Kinsale Policy's coverage provisions and whether the Equinox Entities qualify as "additional insureds" under the Kinsale Policy's terms. Courts have found nonsignatories to arbitration provisions in insurance policies to be bound by the provisions where the nonsignatories sought declarations that their insureds were "additional insureds" under those policies and thereby entitled to coverage. See Insurance Company of Greater New York v. Kinsale Insurance Company, 23-cv-3577 (JMF), 2023 WL 7736653, at *2 (S.D.N.Y. Nov. 15, 2023) (binding a nonsignatory to an arbitration provision "because it seeks to enforce other provisions of the Policy" against the insurer); Greater New York Mutual Insurance Company v. Kinsale Insurance Company, 226 A.D.3d 408, 409 (1st Dept. 2024) (same).

        Ohio Security's equitable subrogation claim in particular makes clear that it is not merely exploiting the contractual relation between Kinsale and the Equinox Entities that it alleges was created by the Kinsale Policy. Ohio Security asserts that Kinsale failed to undertake its duty to defend the Equinox Entities pursuant to the Kinsale Policy and that "consistent with the equitable subrogation right afforded to Ohio Security, Ohio Security is subrogated to the rights of the [Equinox Entities]" and is entitled to recover its defense costs from Kinsale. (Am. Compl. ¶¶ 60-61.) What Ohio Security seeks is to assume the contractual relation between the Equinox Entities and Kinsale for its own benefit. Indeed, the Second Circuit has recognized that "an insurer-subrogee stands in the shoes of its insured." Tencara, 170 F.3d at 353 (quoting Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992)). On this basis, the Second Circuit in Tencara also compelled the insurers that had indemnified the racing yacht owners who derived direct benefits from the classification certificate to arbitrate their own claims against the ship classification society. Id. at 351, 353.

Ohio Security attempts to reframe its equitable subrogation claim against Kinsale as one for contribution. Ohio Security points to decisions by other courts in this Circuit holding that claims for contribution brought by nonsignatory insurers seek relief not flowing directly from contract, but rather from principles of equity. See Danaher Corp. v. Travelers Indemnity Co., 10-cv-121 (JPO), 2014 WL 7008938, at *8-9 (S.D.N.Y. Dec. 12, 2014); Certain Underwriters at Llyod's, London v. Allied Professionals Insurance Company, 22-cv-14 (WMS) (HKS), 2023 WL 4449570, at *4-6 (W.D.N.Y. July 11, 2023). However, the nonsignatory insurers in those cases did not bring equitable subrogation claims. In Danaher, the nonsignatory sought to "oblige other insurers to pay their share (if any) of defense and indemnification costs." 2014 WL 7008938, at *9. Accordingly, the court determined that the nonsignatory's cause of action "sounds in contribution," which allows "one party jointly liable on an obligation that pays more than its pro rata share to . . . compel the co-obligors to contribute their share of the amount paid."[1] Id. at *8 (quoting Maryland Casualty Co. v. W.R. Grace and Co., 218 F.3d 204, 210 (2d Cir. 2000)) (brackets omitted). Similarly, in Allied Professionals, the nonsignatory only sought a declaratory judgment that its co-insurer "had a duty to defend and indemnify" their shared insured "on a primary and noncontributory basis" and a money judgment against the co-insurer for "an amount equal to" what the nonsignatory had incurred in defending and indemnifying the shared insured. 2023 WL 4449570, at *1-2. The court interpreted these claims to be based on "a theory of either contribution or implied indemnification." Id. at *5.

---

[1] Ohio Security contends that the court in Danaher "essentially treated [the nonsignatory's] equitable subrogation cause of action as one for contribution." But in an earlier opinion dismissing the nonsignatory's amended third party complaint, the court held that the nonsignatory's equitable subrogation claims failed as a matter of law. Danaher Corp. v. Travelers Indemnity Co., 10-cv-121 (JPO), 2014 WL 1133472, at *7 (S.D.N.Y. Mar. 21, 2014). The nonsignatory's second amended third party complaint subsequently before the court on the motions to compel arbitration no longer contained an equitable subrogation claim. See Second Am. Third Party Compl., Danaher, 2014 WL 7008938, ECF 192.

Unlike the nonsignatories in Danaher and Allied Professionals, Ohio Security does bring an equitable subrogation claim against Kinsale. (Am. Compl. ¶¶ 59-63.) Ohio Security explicitly and unambiguously asserts that "consistent with the equitable subrogation right afforded to [it] under New York law, [it] is subrogated to the rights of the [Equinox Entities]." (Id. ¶ 62.) In turn, Ohio Security alleges that it is "entitled to reimbursement of all defense fees." (Id.) Ohio Security's equitable subrogation claim does not seek a proportional reimbursement of defense fees as would be consistent with a theory of contribution. See Technology Insurance Company, Inc. v. Philadelphia Indemnity Insurance Company, 642 F. Supp. 3d 445, 470 (S.D.N.Y. 2022) ("[C]laims between co-insurers do not sound precisely in contribution when they are not based on ratable or proportional reimbursement.") (quoting McDermott v. City of New York, 50 N.Y.2d 211, 216 (1980)) (internal quotation marks omitted). In fact, elsewhere in its amended complaint Ohio Security seeks a declaratory judgment that Kinsale is obligated to insure, defend, and indemnify the Equinox Entities "without any contribution" by Ohio Security. (Am. Compl. at 10.) Accordingly, the Court declines to characterize Ohio Security's equitable subrogation claim as one for contribution.[2]

Scope of the Arbitration Provision

Having concluded that Ohio Security is estopped from objecting to arbitration of its claims, the Court must still determine whether Ohio Security's claims and Black Bull's crossclaims are within the scope of the arbitration provision. In light of the Supreme Court's decision in Granite Rock, the Second Circuit has clarified that the initial inquiry in determining an arbitration provision's scope is "whether, under ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." Local Union 97,

---

[2] The Court does not address whether Ohio Security has validly stated a claim for equitable subrogation against Kinsale.

International Brotherhood of Electrical Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023) (per curiam).  If a court finds that the arbitration provision is "ambiguous about whether it covers the dispute at hand," it may then apply a rebuttable "presumption of arbitrability."  Id. at 113 (quoting Granite Rock, 561 U.S. at 301).  That presumption "is a court's last, rather than first, resort."  Id. at 114.

Relying on "ordinary principles of contract interpretation," the Court finds that the Kinsale Policy's arbitration provision unambiguously covers Ohio Security's claims.  Id.  The plain terms of the provision state that "[a]ll disputes over coverage or any rights afforded under [the Kinsale Policy], including whether an entity or person is . . . an additional insured . . . shall be submitted to binding arbitration."  (Ferlazzo Decl. Ex. 1, ECF 28-1 at 25.)  Ohio Security's claims for a declaratory judgment that Kinsale has a duty to defend the Equinox Entities and for equitable subrogation depend on whether the Equinox Entities qualify as "additional insureds" under the Kinsale Policy and the nature of their rights, if any, under the same.  (See Am. Compl. ¶¶ 41, 60-62.)  Ohio Security's claims for quantum meruit/unjust enrichment and statutory interest also spring from its contention that the Equinox Entities are "additional insureds" because, if that is the case, Ohio Security asserts that it should not have been required to fund their defense and is entitled to reimbursement.  (See id. ¶¶ 50-53, 65-66.)  The arbitration provision further states that disputes over "the effect of any applicable statutes or common law upon the contractual obligations owed" are arbitrable.  (Ferlazzo Decl. Ex. 1, ECF 28-1 at 25.)  Ohio Security's remaining claim for declaratory judgment for breach of insurance due to Kinsale's failure to timely disclaim coverage is expressly based on New York Insurance Law § 3420 and common law.  (Am. Compl. ¶¶ 55-58.)  Therefore, not only are Ohio Security's claims covered by the provision's broad reference to "[a]ll disputes over coverage or any rights

afforded under [the Kinsale Policy]," but they are also encompassed in its more specific, non-exhaustive list of arbitrable claims. (Ferlazzo Decl. Ex. 1, ECF 28-1 at 25.)

Furthermore, the Court finds that the arbitration provision unambiguously covers Black Bull's crossclaims against Kinsale. Black Bull's first crossclaim seeks a declaration that Kinsale is obligated to provide it with coverage under the Kinsale Policy, while its second crossclaim is for breach of contract due to Kinsale's denial of coverage. (Black Bull Answer, ECF 23 ¶¶ 77, 79.) Black Bull's crossclaims center on its entitlement to coverage under the Kinsale Policy and are plainly covered by the provision's reference to "[a]ll disputes over coverage or any rights afforded under [the Kinsale Policy]." (Ferlazzo Decl. Ex. 1, ECF 28-1 at 25.)

## CONCLUSION

Kinsale's motion to compel arbitration of Ohio Security's claims and Black Bull's crossclaims (ECF 27) is GRANTED. This action is STAYED pending the conclusion of the arbitration. See Katz v. Cellco Partnership, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested."). The parties are directed to advise the Court in writing within 30 days of a final award in the arbitration or other form of resolution of the claims asserted in this action.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
December 17, 2024